[Civ. No. 21608.   Second Dist., Div. Three.   Oct. 23, 1956.]

HENRY O. BRAGG, Respondent, v. MOBILHOME COMPANY OF LOS ANGELES et al., Appellants.

Spray, Gould & Bowers for Appellants.

Earl Malmrose for Respondent.

SHINN, P. J.—Defendants appeal from a judgment for $25,000 damages for personal injuries entered on a jury verdict. They contend that as a matter of law they were not negligent, that the court erred in instructing the jury, and that a new trial should have been granted because of newly discovered evidence.

There was evidence of the following facts: Plaintiff, a roofing contractor, agreed to roof 14 prefabricated houses which defendants were constructing and assembling on their premises. Twelve of the roofs were to be shingled and the others were to be built-up or rock roofs. Plaintiff testified that his estimator checked over the job but he (plaintiff) never saw the house plans, although he admitted having seen a plot plan which one of defendants' workmen drew for him at the job site. Defendants were to supply the tin fittings and chimney saddles for the roofs; plaintiff admitted that he knew each house would be provided with a fireplace and chimney, to be installed after the buildings were transported to their permanent location. He knew that unfinished roofs would be tarpapered to protect the eaves from weather damage.

Plaintiff had from eight to fourteen employees. Prior to the accident, he had himself worked on only one of the other houses, which had a rock roof and an opening for a chimney cut out near the top of the roof. He went to work on the unfinished house where the accident occurred on the afternoon of November 9, 1953. He climbed a ladder which was leaning against the front of the house and removed the tarpaper covering the edge of the roof on the west side of the building. He then shingled the west side of the roof.

The next morning plaintiff returned to work but did not ask defendants' workmen whether there were any holes under the tarpaper. He testified that he saw no plumbing holes or chimney saddles on the roof. He began removing more of the tarpaper, which was very smoothly rolled and was fastened onto the roofing boards with strips of lumber nailed down at the top and bottom. The rolls of tarpaper were three feet wide, and the roofing boards were 1 by 6 inches, nailed parallel with the edge of the roof and spaced about 4½ inches apart. Plaintiff walked in a stooped position for about 25 or 30 feet down the center of the tarpaper, pulling the nails out of the slats which held the tarpaper in place. He then stepped into a tarpaper covered hole in the roof and fell to the pavement below, sustaining severe injuries. (The hole had been cut by defendants to accommo-

date the fireplace and chimney which were to be installed at a later date.) He stated that his eyes were on the tarpaper ahead of him and that he noticed no sag in the paper at the spot where he fell through. There was no planking or railing surrounding the hole and he did not know the hole was there.

Two of defendants' workmen, James Mosely and Elmer Johnson, testified for plaintiff. They had covered the roof with tarpaper four days before the accident. Mosely testified that the paper over the hole was as smooth as the rest of the paper even though he had stepped on the hole while laying the tarpaper. He stated that he placed no markings or railings around the hole, that it was impossible to see the hole unless one were practically underneath it, and that he talked to plaintiff just before the accident, but did not warn him of the concealed hole although he knew plaintiff was the roofing man.

Johnson testified that he and Mosely were told to paper the roof to protect the masonite under the eaves against rainfall but that they received no instruction to fence the hole. This was confirmed by Robert Nelson, defendants' construction superintendent, who testified on behalf of defendants. Nelson stated that the house was in a rough frame state of construction at the time of the accident, i.e., the roof was braced, the sheathing applied, the plumbing and heating pipes were installed, and the only opening in the roof was for the fireplace and chimney. According to Nelson, the 14 houses were of four different models, some having the chimney in front, some on the side and some in a gable.

The first assignment of error to be considered is that the court erroneously instructed the jury that section 1571 (a) of title 8 to the Administrative Code, being a construction safety order applying to buildings prescribed by the Division of Industrial Safety, pursuant to authority granted by sections 6312 and 6500 of the Labor Code, was applicable to the case. The order reads as set out in the margin.[1] The court instructed that defendants had a duty to comply with said order. Defendants argue that the construction safety orders

---

[1]"'1571.(a). As soon as the hole is framed all floor or roof openings within a building or other structure during the course of construction, alteration or repairing, shall be covered with planks so as to carry safely any load which may be required to be supported thereon or it shall be fenced in on all sides by a standard railing. Note: 'As soon as the hole is framed' means when the header beams are nailed to the joist and before the sheathing is laid.''

are for the exclusive benefit of employees and that since plaintiff was an independent contractor and not their employee he was not a member of the class intended to be protected by such safety orders.

Plaintiff contends that section 1571 (a) operates protectively not only as to employees but also as to the general public. He cites *Pierson* v. *Holly Sugar Corp.*, 107 Cal.App. 2d 298 [237 P.2d 28], which he says is controlling authority. In that case it was held that certain safety orders, not identified in the opinion by number, which regulated the maintenance and operation of elevators were for the benefit of the public at large. Undoubtedly, the court gave effect to the precise wording of the safety orders relating to elevators. Plaintiff has not compared the wording of those sections with the wording of section 1571 (a) and, of course, the case does not hold that all safety orders are applicable to the general public. However, it is unnecessary to consider the implications of the holding in the Pierson case. Our question is not whether section 1571 (a) is applicable to the general public but whether it was applicable to plaintiff under the circumstances and at the time of his injury.

The orders of the Division of Industrial Safety relate to many different subjects arranged alphabetically from "Air Pressure Tank Orders" to "Window Cleaning" orders. Subchapter 4 deals with "Construction Safety Orders." The authority of the division is derived from sections 6312 and 6500 of the Labor Code which are set out in the margin.[2]

---

[2] "§ 6312. The division has the power, jurisdiction, and supervision over every employment and place of employment in this State, which is necessary adequately to enforce and administer all laws and lawful orders requiring such employment and place of employment to be safe, and requiring the protection of the life and safety of every employee in such employment or place of employment."

"§ 6500. The division, after a hearing had upon its own motion or upon complaint, by general or special orders, rules or regulations, or otherwise may:

"(a) [Safety devices, etc.] Declare and prescribe what safety devices, safeguards, or other means or methods of protection are well adapted to render the employees of every employment and place of employment safe as required by law or lawful order.

"(b) [Standards: Uniform safety devices, etc.] Fix reasonable standards and prescribe, modify, and enforce reasonable orders for the adoption, installation, use, maintenance, and operation of reasonably uniform safety devices, safeguards, and other means or methods of protection, which are necessary to carry out all laws and lawful orders rela-

These sections are found in division 5, part 1 of the Labor Code entitled "Safety in Employment"; "Workmen's Safety." They relate to all places of employment, impose duties on employers to comply with stated requirements for the protection of life and safety of employees and forbid the construction of any unsafe place of employment by any employer, owner or lessee of real property. ■ The clear purpose of the Labor Code sections is to provide for the safety of employees. ■ The purpose of the "Construction Safety Orders" is the same. The words "employment," "employer" and "employee" are defined in sections 6303, 6304 and 6305 of the Labor Code.[3] ■ While the definition of "employee" brings in all workmen who are required or directed by an employer to go to work or be in a place of employment, it is not to be understood as excluding workmen who may not precisely fit into the definition but are clearly of a class for whose protection the safety measures are required.

■ Defendants point out that plaintiff was roofing the building under contract; that he was therefore an independent contractor and was excluded from protection of the safety order in question. We agree that plaintiff was an independent contractor but are nevertheless of the opinion that under the circumstances of the accident he was within the intended protection of the safety order. In many situations there are significant distinctions between independent contractors and employees, but we think there is no occasion

tive to the protection of the life and safety of employees in employments and places of employment.

"(c) [Construction, repair and maintenance standards] Fix and order reasonable standards for the construction, repair and maintenance of places of employment necessary to make them safe.

"(d) [Other acts.] Require the performance of any other act which the protection of the life and safety of the employees in employments and places of employment reasonably demands.

"[Signing general orders.] General orders issued under this section must be signed by three members of the board."

[3]" 'Employment' includes the carrying on of any trade, enterprise, project, industry, business, occupation or work, including all excavation, demolition and construction work, or any process or operation in any way related thereto, in which any person is engaged or permitted to work for hire except household domestic service."

" 'Employer' shall have the same meaning as in section 3300 and shall also include every person having direction, management, control, or custody of any employment, place of employment, or any employee."

" 'Employee' means every person who is required or directed by any employer, to engage in any employment, or to go to work or be at any time in any place of employment."

to recognize any distinction under the facts of the present case.

The safety orders are intended to provide protection for workmen engaged in construction work. Effect should be given to the purpose of the orders so as to make them applicable to all persons who are properly engaged as ordinary workmen in construction work for the benefit of those who have engaged their services. While in a narrow sense plaintiff was not an employee of defendants, he was doing the work of one of his own employees who themselves would have been entitled to the benefit of the safety order. (*Mula* v. *Meyer*, 132 Cal.App.2d 279, 284 [282 P.2d 107]; *Slovick* v. *James I. Barnes Const. Co.*, 142 Cal.App.2d 618 [298 P.2d 923].) Plaintiff, for the time being, was of the class of his employees. While he was shingling the roof he was exposed to the same dangers as other workmen, needed the same protection, and, we think, was entitled to it. It was the duty of defendants to comply with the safety order as a protection to men who would be working on the roof under engagement by and for the benefit of defendants. We think that duty was extended to plaintiff when he took his place beside or in the place of one of his workmen. This definition of the duty of defendants seems to us just and reasonable and an application of section 1571 (a) in accordance with its clear purpose.

Our views have support in the statement of the learned counsel for defendants, found in their closing brief, "The requirements are clearly not meant for the benefit of all persons on the premises during construction, but for workmen only."

We have not overlooked the claim of defendants that there was no direct evidence that the hole had been "framed" which was a condition to the duty to cover it or fence it. We think the evidence left no doubt that the hole was framed; otherwise defendants would not have had plaintiff putting on the roof.

We, therefore, hold that it was not error to give the instruction on the applicability of section 1571 (a).

■ But, although the foregoing instruction was not erroneous, we are of the opinion that prejudicial error was committed in the giving of another of plaintiff's instructions. At the request of the plaintiff the court gave an instruction

as set out in the margin.[4]  Defendants say that the concluding sentence of the instruction was not only erroneous but that the effect of it was to direct the jury to determine the issue of contributory negligence in favor of the plaintiff.  We are obliged to agree that such is the case.  Except for the concluding sentence the instruction was a correct statement of the law.

There was ample evidence to justify a finding that plaintiff was guilty of contributory negligence.  He was an experienced roofer.  He knew the houses were to have chimneys.  On the day preceding the accident he had been working on the roof for several hours.  It was the practice to cover holes left in the roof with tarpaper to protect the material underneath.  Plaintiff had knowledge of this practice.  He did not look at the plans nor did he make an inspection of the roof nor any inquiry to learn where a chimney was to go or whether an opening had been left for a chimney.  These facts of themselves would have supported a finding that plaintiff was guilty of contributory negligence.  Although he had a right to assume that if an opening had been left in the roof for a chimney it would have been planked over or fenced as required by the safety order, the right to act upon the assumption was dependent upon his exercising ordinary care to learn whether there were any holes in the roof.  The fact that there was no fence around the hole did not relieve him from that duty of care.  The question of his contributory negligence was the one upon which the case would naturally turn.  In view of the evidence the only reasonable conclusion was that defendants had not complied wtih the safety order and were therefore guilty of negligence.  If plaintiff was free from contributory negligence the negligence of the defendants would have been the sole proximate cause of the accident.  There was no evidence that defendants were negli-

---

[4] "'A person who, himself, in exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and he has a further right to rely and act on that assumption.  Thus it is not negligence for such a person to fail to anticipate injury which can come to him only from a violation of law or duty by another.  However, an exception should be noted: The rights just defined do not exist when it is reasonably apparent to one, or in the exercise of ordinary care would be apparent to him that another is not going to perform his duty. *Thus in the instant case, the plaintiff has a right to rely on the presumption that defendants complied with the law requiring that all roof openings be covered with planks and it was not contributory negligence in failing to anticipate injury which resulted from a violation of this law.*'"

gent except with respect to their failure to comply with the safety order. The issue was narrowed down to the question whether plaintiff, through reliance upon the assumption that since there was no railing there was no hole, was guilty of negligence in failing to discover whether a hole had been left for a chimney either by inspection or by making inquiry.

The doctrine that one may assume that others will obey the law and exercise due care is a dangerous one. Any one who places too great reliance upon it is likely not to be long for this world. When a jury is instructed upon the doctrine of reliance, nothing could be more important than a clear statement of the proviso that in order to rely upon the assumption one must himself be free from negligence and that he must use ordinary care to learn whether those upon whose conduct he relies are complying with their duties. The rule was sufficiently stated in the part of the instruction which preceded the last sentence. In other instructions the court had defined contributory negligence as a failure to exercise ordinary care under the circumstances. Except for the italicized portion of the instruction the court's statements of the law were in the abstract. The questioned statement made direct application of the law to the facts of the case. The clause commencing *"Thus in the instant case,"* would convey the same meaning as if it had read *"In view of the evidence and the rules just stated the plaintiff had a right to rely on the presumption that defendants complied with the law"* etc. He did not have that right unless he was free from negligence. Again the court said *"it was not contributory negligence in failing to anticipate injury which resulted from a violation of this law."* That was the precise question the jury had to decide. Plaintiff says that the jury would have read into the instruction the exception previously stated. We do not believe so. The exception was stated as an abstract proposition. It was left out of the concluding sentence undoubtedly by design. If the court had intended to state that in view of all of the evidence in the case it appeared as a matter of law that plaintiff was not guilty of negligence in failing to discover the hole in the roof it could scarely have composed a more appropriate statement for that purpose. *"Thus in the instant case,"* encompasses all the evidence and the legal principles which had a bearing upon the question of plaintiff's contributory negligence. The statement took from the jury the question of plaintiff's contributory negligence.

We cannot say that but for the error the verdict would have

been the same. Where grievous error has been committed in the instructions, and there is grave doubt whether but for the error the verdict would have been the same, justice would seem to require that the doubt be resolved in favor of the party whose right to a fair trial has been invaded.

The rule is stated in 24 California Jurisprudence section 101, page 841 et seq., as follows: ''The province of the jury is invaded where an instruction assumes the existence of a fact which is not in evidence, or with respect to which there is a conflict of evidence, and any error in this respect is not, it has been held, cured by other charges which submit to the jury the question whether such fact exists.'' An imposing array of authorities supporting the rule will be found on page 663, 44 Cal.2d 649 [284 P.2d 487] (*Pauly* v. *King*). The failure to apply the rule in the present case would be to ignore it. We are firmly persuaded that the error was seriously prejudicial to defendants.

One other claim of error merits some consideration. Defendants requested and the court refused instructions to the effect that one who is invited to enter upon an uncompleted building accepts an invitation to enter upon it in its existing condition and assumes the risk of whatever he may encounter, citing *Ambrose* v. *Allen*, 113 Cal.App. 107 [289 P. 169]; *Kolburn* v. *P. J. Walker Co.*, 38 Cal.App.2d 545 [101 P.2d 747]; *Irvine* v. *J. F. Shea Co., Inc.*, 41 Cal.App.2d 458 [107 P.2d 80]; *Mitchell* v. *A. J. Bayer Co.*, 126 Cal.App.2d 501 [272 P.2d 870]. We do not believe the court was in error in refusing this instruction. It was an incorrect statement of the law because it would have imposed upon plaintiff not only the duty to anticipate dangerous conditions existing in the building which involved no violation of law on the part of defendants but also a duty to anticipate any and all conditions that might exist by reason of violations of law by them. Safety regulations and other legislation of like import are matters of public policy. It would be against that policy to penalize persons who are innocently injured through violations of law. The rule that one need not in the exercise of ordinary care anticipate violations of law by others should not be overridden by the rule relied upon by defendants, namely, that one who enters an uncompleted building assumes the risk inherent therein. In the present case it is sufficient to say that the rule of assumption of risk is not to be applied in cases of violations of statutory law such as the safety orders we are considering. We there-

fore hold that when plaintiff went upon the roof of defendants' building he did not as a matter of law assume the risk involved in defendants' failure to comply with the safety order.

We do not believe the court was in error in refusing defendants' instruction to the effect that plaintiff was conclusively presumed to have knowledge of all that his employee learned or could have learned from an examination of the building plans. The instruction would have charged plaintiff with actual knowledge of the location of the hole that was left for a chimney. Defendants have cited no case which carries the rule of imputed knowledge to such an extent, and it could not reasonably be extended so as to charge plaintiff with knowledge of the location of holes on the roof for the sole reason that his estimator had seen the plans. He was not charged with the duty of locating holes in the roof for plaintiff's information.

The question whether a new trial should have been granted on the ground of newly discovered evidence is moot.

The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 19, 1956.