[Civ. No. 19578. First Dist., Div. Two. Apr. 24, 1962.]

PACIFIC TELEPHONE AND TELEGRAPH COMPANY, Cross-Complainant and Respondent, v. NELSON HYDE CHICK, Cross-Defendant and Appellant.█

Bledsoe, Smith, Cathcart, Johnson & Phelps, J. Barton Phelps and Robert A. Seligson for Cross-Defendant and Appellant.

Boyd, Taylor & Flageollet and Herbert Chamberlin for Cross-Complainant and Respondent.

AGEE, J.—This action involves the interpretation of indemnity provisions in a contract under which appellant, Underground Construction Co., agreed to do certain excavation and installation work for respondent, Pacific Telephone & Telegraph Co.

On Saturday, June 15, 1957, about 1 o'clock a. m., an automobile eastbound on Willow Pass Road, in Contra Costa County, swerved over the center line and collided headon with a westbound automobile in which one Doyle was a passenger. The driver of the eastbound car was killed and Doyle sustained severe personal injuries.

Doyle sued Underground Construction Co. and Pacific

Telephone & Telegraph Co. on the theory, as stated in the pretrial order, that the eastbound car "was caused to swerve upon the highway and to run headon into the plaintiff's car by reason of debris left unlighted and unguarded . . . upon the highway." Pacific cross-complained against Underground, seeking indemnity over, attorney fees and costs.

The trial court read to the jury certain applicable portions of Ordinance 1000 of the County of Contra Costa, relating to warning measures and removal of earth from the pavement, and instructed it that any violation thereof which proximately caused the collision entitled plaintiff to recover against both defendants. The court stated that Pacific Telephone's duty to comply with the ordinance was nondelegable and that a violation thereof by Underground was also chargeable to Pacific. The court concluded: "Stated another way: If the plaintiff is entitled to a verdict in this case, such verdict shall be against both defendants."

As to the cross-complaint, the jury was instructed as follows: "With regard to the cross-complaint filed by Pacific Telephone & Telegraph Company against co-defendant, Underground, the Court has determined as a matter of law that the provisions of the contract between the parties require that the indemnity agreement contained therein be given effect. Accordingly, you are directed, in the event your verdict is for the plaintiff, to find in favor of the cross-complainant, Pacific, against the cross-defendant, Underground."

Doyle was awarded a verdict of $300,000 against both defendants, and Pacific received a verdict on its cross-complaint indemnifying it against Underground "for the amount of the verdict rendered herein, plus costs and attorney fees, if any, to be determined by the Court."

There is no evidence to support Doyle's claim of negligence except that relating to the condition on the highway created by the excavation work being done by Underground and the failure to properly safeguard the same.

Underground has fully satisfied Doyle's judgment. Its appeal is only from the judgment indemnifying Pacific.

BACKGROUND

On March 19, 1957, Pacific Telephone obtained a permit from the Public Works Department of Contra Costa County to install underground conduits and manholes along a certain portion of Willow Pass Road pursuant to Contra Costa County Ordinance No. 1000.

On May 3, 1957, Pacific Telephone and Underground Con-

struction entered into a written contract under which Underground Construction, as an independent contractor, undertook to do the work called for under said permit. The plans called for trenching operations along the edge of the eastbound lane of the highway for the purpose of installing underground conduit tiling and also required excavation work extending into the edge of the eastbound lane in order to construct and install manholes necessary for the maintenance of telephone cables within the conduit tiling.

Underground's work involved the digging of a trench approximately two feet wide and five feet deep along the edge of the highway. The conduit tiles were placed end to end in the trench, sealed together with cement mortar, and the trench backfilled. At specified intervals an excavation approximately five feet wide and $8\frac{1}{2}$ feet deep was made, into which forms were placed and concrete poured to form a manhole. The concrete was required to set for 72 hours before the forms were removed and the manhole completed.

By Friday, June 14, 1957, the work had progressed to a point on Willow Pass Road, near Loftus Road, at which the manhole relevant to this action was being constructed. Underground's employees had encircled this manhole with a pile of spoil-dirt some three days previously. This pile of dirt blocked a substantial portion of the eastbound lane of Willow Pass Road.

## The Indemnity Provisions

The construction contract of May 3, 1957, provided indemnity to Pacific in five different situations. The provision pertinent to this action is as follows: "16. Contractor shall indemnify and save harmless Owner of and from (1) any and all claims and demands which may be made against Owner by reason of any injury to or death of any person or damage suffered or sustained by any person or corporation caused by or alleged to have been caused by any act or omission, negligent or otherwise, of Contractor or any subcontractor under this agreement or of Contractor's or any subcontractor's employees, workmen, servants or agents, . . ." Clause 17 requires the contractor to take out and maintain public liability insurance which "shall also protect Contractor against the liability assumed by Contractor under subdivision (1) of the indemnity provisions in article 16 of this agreement."

Paraphrased, the foregoing indemnity provision would read as follows: Underground shall indemnify Pacific for claims

made against Pacific by reason of any injury to any person caused by any act or omission of Underground's employees. As before stated, Doyle's claim is based upon the condition that was created and thereafter maintained by Underground at the time and place of the collision. There is no evidence whatsoever that Pacific did anything affirmatively to create this condition or maintain it afterwards.

## UNDERGROUND'S THEORY

Underground contends that the construction contract does not indemnify Pacific for its "own independent act of negligence." It describes such negligence as follows: "The evidence showed violations of sections 50 [safeguards to protect public] and 58 [removal of earth from pavement] of Ordinance 1000 and that they were a proximate cause of the accident. The evidence showed that Pacific knew about these violations for at least three or four days before the accident and that it acquiesced in the continuation of this dangerous condition."

Pacific's knowledge of such situation is claimed to be imputed to it through an inspector employed by Pacific to make a daily inspection of the work as it progressed. Underground states that this inspector "knew about the existence of the dirt pile on the eastbound lane of travel and the inadequacy or absence of any warning to motorists, and yet he did nothing about it. For three days prior to the accident, he drove his car around the dirt pile, each time going on the wrong side of the road. Each morning when he came to work, he saw that the two barricades near the dirt pile were in the same position as when he left the night before. For at least three days, Tweedy [the inspector] knew or should have known that the situation in question was unsafe and violated Contra Costa County Ordinance 1000."

Tweedy testified that he was the only employee of Pacific on the job and that he was the only one there to see about safety so far as Pacific was concerned. He further testified that his only duties were to make certain that the conduits and manholes were properly installed and to have any defects in the work corrected before it was covered up by backfill.

The same points as to acquiescence and independent negligence were decided adversely to Underground in the recent case of *County of Los Angeles* v. *Cox Bros. Constr. Co.*, 195 Cal.App.2d 836 [16 Cal.Rptr. 250] (hearing by Supreme Court denied). There a Mrs. White had recovered a judgment against the county for damages for personal injuries

sustained when the automobile in which she was riding overturned because of the defective condition of the county highway.. The highway was being reconstructed by Cox Brothers Construction Company under a contract let to it by the County of Los Angeles. The sole basis of the county's liability was that it had knowledge, through its inspector, of the defective condition of the highway and thereafter failed to remedy the situation or to take steps reasonably necessary to protect the public. (Gov. Code, § 53051.) The judgment was affirmed on appeal. (*White* v. *Cox Bros. Constr. Co.*, 162 Cal.App.2d 491 [329 P.2d 14].) Mrs. White had executed a covenant not to sue Cox Brothers and the trial was against the county alone. The county paid the White judgment and then recovered a judgment of indemnity from the contractor.

The indemnity clause provided that the contractor " 'shall save, keep, and bear harmless the County, and all officers and agents thereof, from all suits, actions, or claims of any character brought on account of any injury or damage to persons or property as a consequence of neglect in safeguarding the work, or through the use of unacceptable materials, or on account of any act or omission, on his part or on that of any of his employees or agents.' "

The contractor contended that the hazardous condition in question existed before it commenced its road work at the place where the accident happened and that it could not be chargeable therefor. The court refuted this contention, stating: "It further appears that the condition of the road at the place of Mrs. White's accident was at least in part occasioned or aggravated by the acts of appellants [contractor] in removing the pavement in such a manner as to leave an abrupt dropoff to a rough, rutted, gravel surface containing a bad chuckhole."

The court discusses section 95, Restatement of Restitution, with respect to the effect of acquiescence by the indemnitee in the continuance of a dangerous condition after knowledge thereof, but points out that this is not material where there is a contract of indemnity, in which case the rights of the indemnitee as against the indemnitor are to be determined by the provisions of the contract. The court stated: "It would appear that the right of the county to recover here is based upon the contractual relations of the parties, and the fact that the county may have been liable to Mrs. White for the injuries suffered by her because of its independent negligence does not relieve appellants of their duty to indemnify the county for such loss. When it is considered that in *City &*

*County of San Francisco* v. *Ho Sing*, 51 Cal.2d 127 [330 P.2d 802], and *County of Alameda* v. *Southern Pac. Co.*, 55 Cal.2d 479 [11 Cal.Rptr. 751, 360 P.2d 327], a right of indemnity was enforced without express agreement, it is difficult to escape the conclusion that the court below was correct in its determination in the instant case where there is an indemnity agreement which, if it means anything, means that appellants should indemnify the county for exactly the type of liability which it suffered here.''

*Harvey Machine Co.* v. *Hatzel & Buehler, Inc.*, 54 Cal.2d 445 [6 Cal.Rptr. 284, 353 P.2d 924], involved a situation where the plaintiff had contracted for the construction of a new industrial building. One of the employees of the defendants-contractors fell into an open elevator pit and sued plaintiff for his personal injuries. Plaintiff thereupon brought a declaratory relief action against defendants, setting up a ''hold harmless'' provision in the construction contract similar to that in the instant case. Defendants contended that the indemnity provision did not protect plaintiff against its own acts of negligence. The court assumed for the purpose of its decision that the employee's fall was a consequence of a breach of duty owed to him by plaintiff. The court stated: ''The question in the present case . . . is whether such an indemnity clause operates to exculpate the indemnitee from the consequences of its own breach of duty where the clause does not expressly state that the damage so caused is intended to be included in the coverage of the clause. The question is one of interpretation of contracts. . . . Where, as in the case at bar, the contractors had practical control of the structures on the premises, any negligence for the condition of the structures would obviously not be that of the owner alone. The accident, in those circumstances, was one of the risks, if not the most obvious risk, against which Harvey sought to be covered. This realistic approach cannot be sacrificed to the formalism of rules of construction where the circumstances are inconsistent with the need of an application of such rules in order to determine the parties' intentions. . . . Where, as in the present case, the circumstances of the claimed wrongful conduct dictate that damages resulting therefrom were intended to be dealt with in the agreement, there is no room for construction of the agreement. It speaks for itself.''

Underground relies upon *Vinnell Co.* v. *Pacific Elec. Ry. Co.*, 52 Cal.2d 411 [340 P.2d 604], where it was held that the agreement therein could not be construed to provide that the

715

parties intended to protect the indemnitee (railroad) against its affirmative acts of negligence, where such protection was not expressly provided. In that case a railroad entered into a contract with a construction contractor giving the latter a right of entry to its yard in connection with the construction of a drainage project. The railroad continued to operate in the yard during the construction period. It negligently switched a locomotive and some freight cars into an open excavation which was part of the construction project. The contractor sued for damages and a judgment in its favor was affirmed. The railroad based its defense on the indemnity clause in the contract.

The Supreme Court, in *Harvey, supra,* discussed the *Vinnell* case at length, saying: "In that case a railroad granted permission to a construction contractor to build a drain ditch across the railroad's yard, and exacted an indemnification provision in return. While the ditch was under construction the railroad continued to operate in the yard, and negligently switched a string of its cars into an excavation. Significant factual differences exist in the present case. Here the indemnitee did not continue to maintain independent operations on the premises whereon construction was in progress. The injuries did not result from some conduct or omission unrelated to the indemnitors' performance. Most significantly of all, the claimed breach of duty on the indemnitee's part was not active, affirmative misconduct, but at most passive negligence—a failure to act in fulfillment of a duty of care which devolved upon the indemnitee as the owner or occupier of land. Finally, the misconduct does not relate to some matter over which the indemnitee exercised exclusive control. In the *Vinnell* case the negligent switching of the engine and cars was not only within the indemnitee's exclusive control, but was also an act unrelated to the indemnitor's performance. In the present case the elevator pit was a part of the structure connected with the indemnitors' performance, . . ."

Underground also contends that it would be against the policy of the law to allow indemnity to Pacific for a violation of Ordinance 1000, citing section 1668 of the Civil Code, which provides: "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

The same point was made in *Fred A. Chapin Lumber Co.* v. *Lumber Bargains, Inc.*, 189 Cal.App.2d 613 [11 Cal.Rptr. 634]. That decision affirmed a judgment on the pleadings in favor of a lessee in an action by a lessor to recover damages for the destruction of its buildings as the result of a fire caused by the lessee's negligence. The lease contained the following provision: "'LESSOR agrees to maintain in full force and effect and to pay all premiums for fire, earthquake, and storm insurance to cover the value of the buildings.'" The lessor contended that the lessee's negligence arose out of the violation of a local fire prevention ordinance and that any agreement exonerating a lessee from such negligence is contrary to section 1668 of the Civil Code. This contention was rejected, the court holding that the lessor would have to seek reimbursement solely from the proceeds of the insurance which it had agreed to maintain.

The contract in the instant case did not have as its object the exemption of Pacific Telephone from responsibility for its own negligence resulting from a violation of law. It was simply an agreement between two private parties which contained a clause that one of the two parties would indemnify the other against certain claims. The contract did not purport to exempt Pacific Telephone from its responsibility to Doyle, any more than a public liability insurance policy purports to exempt an insured automobile driver from responsibility for injuries to others, resulting from his violation of the Vehicle Code.

As we have stated, it is clear that Doyle's judgment can only be based upon the condition of the highway as created and maintained by Underground and that the negligence, if any, of Pacific, aside from the breach of its nondelegable duty imposed by the county ordinance, was the passive negligence of Pacific's employee, Tweedy, in not doing anything about such condition after acquiring knowledge thereof. This being so, the trial court was correct in instructing the jury to return a verdict in favor of Pacific on its cross-complaint if it found in favor of Doyle on his complaint.

## PACIFIC'S RIGHT TO ATTORNEY FEES

The indemnity provisions in the construction contract (par. 16) conclude as follows: "Contractor shall, at Contractor's own cost, expense and risk, defend any and all suits, actions or other legal proceedings that may be brought or instituted by third persons against Owner or any such claim or demand of such third persons, or to enforce any such

penalty, and pay and satisfy any judgment or decree that may be rendered against Owner in any such suit, action or other legal proceeding.''

It was stipulated at the trial that the amount of the attorney fees to be allowed to Pacific could be fixed by the court. Testimony relevant thereto was taken while the jury was out deliberating on the main action. Upon the return of the verdict, the court fixed attorney fees at $12,500. Costs of $133.45 were added later, under the provisions of section 1033 of the Code of Civil Procedure. There is no issue as to the reasonableness of these amounts.

Underground admitted at the trial that Pacific had demanded that it take over Pacific's defense of the Doyle claim and that it had refused. The record shows that Pacific's insurance carrier assumed such defense and employed the counsel who represented Pacific in this action. Underground's attorney accepted the statement of Pacific's attorney that Pacific had been subrogated to the rights of its insurance carrier. Therefore, Pacific stands in the shoes of its insurance carrier with respect to this issue.

Underground asserts, however, that even though it is held to be an indemnitor as contended by Pacific, it is only a co-indemnitor along with Pacific's insurance carrier and, the latter having assumed Pacific's defense, Underground has no duty to contribute to the costs of such defense.

Underground relies upon *Financial Indem. Co.* v. *Colonial Ins. Co.*, 132 Cal.App.2d 207 [281 P.2d 883], wherein two insurance companies had issued policies to the same assured. Defendant Colonial refused the defense of an action brought against the assured and plaintiff Financial assumed it. The assured won the case and Financial sued Colonial for contribution to the expenses of defense. Recovery was denied, the court stating: ''Plaintiff was obliged to defend the assured whether defendant did or did not. . . . The duty to defend is personal to the particular insurer. It is not entitled to . . . contribution from the other.''

*Financial Indemnity* was expressly disapproved by the Supreme Court in *Continental Cas. Co.* v. *Zurich Ins. Co.*, 57 Cal.2d 27, 38 [17 Cal.Rptr. 12, 366 P.2d 455], which held that all obligated carriers who have refused to defend should be required to share in the costs of the insured's defense. In that case there were three insurance carriers involved, Continental, Zurich and General. One Gudger recovered a personal injury judgment against one Hiatt for

$20,000. Zurich and General had refused to defend Hiatt, and Continental assumed the defense. Continental and Hiatt paid the Gudger judgment and filed this action in declaratory relief against Zurich and General. The trial court held that all three policies covered Hiatt's liability but that Zurich had the primary coverage and was liable to the $15,000 limit of its policy; that Continental and General were liable for the excess over $15,000 on a pro rata basis; that all three insurance companies should share in the costs of defense in the same ratio as they were required to share in paying the Gudger judgment.

The Supreme Court noted that there are cases in which the primary carrier was ordered to pay the entire costs of defense but pointed out that in none of such cases is it shown that the primary coverage was inadequate to indemnify the loss or that the excess policies would at all be reached. (See *American Automobile Ins. Co.* v. *Republic Indemnity Co.,* 52 Cal.2d 507 [341 P.2d 675]; *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co.,* 142 Cal.App.2d 126 [298 P.2d 109]; *Truck Ins. Exchange* v. *Torres,* 193 Cal.App.2d 483 [14 Cal.Rptr. 408].)

In the instant case, Underground does not make any point that its indemnity was limited to any amount less than the amount of the Doyle judgment. However, *Continental, supra,* is directly in point herein on the proposition that Underground is not relieved of its obligation to pay the cost of Pacific's defense to the Doyle claim merely on the basis that Underground refused such defense and Pacific's insurance carrier assumed it.

█ The issue now being made as to attorney fees was never mentioned in the court below. Underground took the position that the indemnity agreement in its entirety did not apply to the factual situation as shown by the evidence and it made no claim that attorney fees should not be awarded even though it did not prevail on the main issue. Underground's attorney made no objection to the inclusion of attorney fees in the form of verdict submitted to the jury as to the cross-complaint. Undoubtedly, Underground's attorney felt that if Underground was held liable to satisfy Doyle's claim under the indemnity clause, its obligation to pay the costs and expenses of Pacific's defense to the claim would follow as an integral part of such liability. The general rule is that points not raised in the trial court will not be considered on appeal. (*Damiani* v. *Albert,* 48 Cal.2d 15, 18 [206

P.2d 780]; 3 Cal.Jur.2d, § 140, p. 604.) We see no reason to make any exception in this case.

 Pacific requests in its brief that this Court direct the lower court to order additional attorney fees for services on this appeal. However, the indemnity clause only requires Underground to pay the expense of defending actions brought by third persons against Pacific. It does not provide for any attorney fees to be awarded in any action between the parties based upon the indemnity agreement.

Pacific's counsel acknowledged this in his testimony regarding the amount of attorney fees to be awarded for his services. He stated: "I am advised that there is a strong possibility of an appeal of this action from the directed verdict, and as I interpret the contract, I will have no further right of action under the contract for attorney fees and costs, . . ." The only "directed verdict" in the case was the instruction to the jury to return a verdict in favor of Pacific on its cross-complaint if the verdict on the complaint was in favor of Doyle. There was a discussion as to what should be done about additional attorney fees in the event that Doyle appealed after whatever verdict might be returned in his case or in the event that Underground and Pacific appealed after such verdict. It was agreed that additional attorney fees could be determined by the trial court in the event such an occasion arose. However, this occasion has never arisen. No appeal was ever taken from the Doyle judgment and it has been satisfied by Underground. Pacific's statement in its brief that it was stipulated that attorney fees *on this appeal* could be determined by the trial court and added to the judgment in favor of Pacific is not supported by the record. The discussion by counsel was intended to refer only to an appeal by one side or the other from the Doyle judgment. In such event, it was stipulated that additional attorney fees could be awarded as being incurred in defending against Doyle's claim.

The judgment appealed from is affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied May 10, 1962, and appellant's petition for a hearing by the Supreme Court was denied June 20, 1962.