[Civ. No. 22255. First Dist., Div. One. June 17, 1966.]

JOHN E. BRANAGH & SONS, Cross-complainant and Respondent, v. GEORGE E. WITCOSKY, Cross-defendant and Appellant.

Bronson, Bronson & McKinnon and Ernest M. Thayer for Cross-defendant and Appellant

Russ & Benson and Wilbur J. Russ for Cross-complainant and Respondent.

SIMS, J.—Cross-defendant George E. Witcosky, doing business as Tara Manufacturing Company, a subcontractor, hereinafter referred to as Tara, has appealed from a judgment which awarded cross-complainant John E. Branagh & Sons, a general contractor, hereinafter referred to as Branagh, indemnification for the sum of $24,142.28 which was paid by Branagh in satisfaction of one-half the amount of judgments obtained against Tara and Branagh by an employee of another subcontractor and the latter's workmen's compensation insurance carrier, and for the additional sum of $10,480.68 for attorneys' fees, court costs and other expenses necessary and incidental to Branagh's defense of the principal action.[1]

The trial court found: ''That it is true that pursuant to the express terms of the aforesaid subcontract agreement, which terms were clear, definite and certain, that cross-defendant Tara did agree to fully indemnify and save cross-complainant Branagh harmless from any and all loss, damage, liability, claim, demand, suit or cause of action resulting from injury or harm to any person arising out of or in any way connected with the performance of work under the subcontract except such injury or harm caused solely and exclusively by the fault or negligence of the contractor Branagh;[2] that it is further true that it was the intention of Branagh and Tara, that Tara would indemnify and hold harmless Branagh from any and all loss, damage, liability, claim, demand suit. or cause of action resulting from injury or harm to any person arising out of or in any way connected with the performance of work under the subcontract except such injury or harm

---

[1]Hermann Meyer, an employee of Tara who was named as a defendant in the principal action, is named as an appellant in the notice of appeal. Since he was not named as a cross-defendant in the cross-complaint, nor mentioned in the findings of fact, conclusions of law or judgment on the cross-complaint, the former reference is disregarded as a clerical error.

[2]The express words of the subcontract are: ''4. Subcontractor further agrees: . . . To fully indemnify and save harmless the Contractor and Owner against any and all loss, damage, liability, claim, demand, suit or cause of action resulting from injury or harm to any person or property arising out of or in any way connected with the performance of work under this subcontract, excepting only such injury or harm as may be caused solely and exclusively by the fault or negligence of Contractor.''

caused solely and exclusively by the fault or negligence of the contractor Branagh; that it is true that the agreement by Tara to indemnify and hold Branagh harmless was not contrary to public policy.''

The court further found: ''That it is true that the plaintiff, Fay Clifton Ray, was injured on the 1st day of March, 1961; that it is further true that said injury arose out of and was connected with the performance of the work of the cross-defendant Tara pursuant to its subcontract agreement with cross-complainant Branagh; it is further true that the active negligence of cross-defendant Tara was a proximate cause of the injury and damages suffered by plaintiff; it is further true that cross-complainant Branagh was itself actively negligent in that it violated electrical safety orders of the Division of Industrial Safety of the State of California and its negligence concurred with the active negligence of cross-defendant Tara in proximately causing the injury and damages to plaintiff.''

Tara's sole contention on appeal is that Branagh is precluded from recovery under the indemnity agreement because an agreement of a private party (as distinguished from an insurance company) to indemnify another for a liability predicated upon negligence which consists of a violation of a state safety order is against public policy and unenforceable. It attacks the last clause of the finding first quoted, a similar conclusion of law, and the judgment insofar as they express and are dependent upon the principle that such an agreement is not contrary to public policy. An examination of the applicable authorities leads to a determination that the learned trial judge correctly found and concluded that the agreement was valid, and that the judgment should be affirmed.

Tara, in reliance upon *Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441] and *Hanna* v. *Lederman* (1963) 223 Cal.App.2d 786 [36 Cal.Rptr. 150], contends that the provisions of section 1668 of the Civil Code[3] preclude enforcement of the indemnity agreement. In the former case the opinion contains an extensive review of the precedents dealing with the application of the provisions of that section to situations where the promisee

---

[3]Civil Code section 1668 provides: ''All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.''

seeks to avoid liability to the promisor who has executed an exculpatory or indemnifying agreement. (60 Cal.2d at pp. 95-98.) The rule distilled is stated as follows: "In one respect, . . . the decisions are uniform. The cases have consistently held that the exculpatory provision may stand only if it does not involve 'the public interest' " (*id.*, p. 96, fn. omitted). In the latter case the court stated: "Each lease contained an exculpatory provision which has been set forth hereinabove. The effect of that provision must be determined in the light of section 1668 of the Civil Code. . . . Since the claim for damages because of negligence embodied in the first cause of action of each tenant was predicated upon the alleged violation of section 94.30312 of the Municipal Code, the exculpatory provision could not be a defense to that cause of action if the evidence showed such violation to be a proximate cause of the tenant's loss. (See *Mills* v. *Ruppert*, 167 Cal.App.2d 58, 62-63 [333 P.2d 818].) " (223 Cal.App.2d at p. 792.)

This approach fails to consider the distinction between what may be termed a true exculpatory agreement whereby the promisee seeks to avoid liability to the promisor who has suffered damage because of the former's negligence, and an indemnity agreement whereby the promisee seeks to enforce the promisor's agreement to indemnify him if and when a claim is asserted against the promisee. (Cf. Civ. Code, § 1668 and Ins. Code, § 533; 2 Rest., Contracts (1932) §§ 574 and 575 and § 572; 6 Williston, Contracts (rev. ed. 1938) §§ 1751A-1751D, pp. 4964-4976 with § 1751, pp. 4960-4964; 1 Witkin, Summary of Cal. Law (1960) Contracts, §§ 200-203, pp. 226-232, with *id.*, 1965 Supp., Torts, § 22D, p. 343; Annotation, 175 A.L.R. 8, pp. 13-20, with *id.*, pp. 20-38; and see Conley and Sayre, *Rights of Indemnity,* 13 Hastings L.J. (1961) 214, 222; Smith, *Contractual Controls of Damages in Commercial Transactions,* 12 Hastings L.J. (1960) 122, 140; Meriam and Thornton, *Indemnity Between Tort-Feasors,* 25 N.Y.U.L.Rev. (1950) 845-862; and Potamkin and Plotka, *Indemnification Against Tort Liability,* 92 U.Pa.L.Rev. (1944) 347.) This distinction was recognized in *Goldman* v. *Ecco-Phoenix Elec. Corp.* (1964) 62 Cal.2d 40 [41 Cal.Rptr. 73, 396 P.2d 377], wherein the opinion recites: "Assuming that the agreement provided that Ecco indemnify Clovis from its own negligence, we cannot, however, accept Ecco's contention that such indemnification would violate public policy and therefore fail under the reasoning of *Tunkl* v. *Regents of the University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d

441], and *Hanna* v. *Lederman* (1963) 223 Cal.App.2d 786, 792 [36 Cal.Rptr. 150]. Clovis does not seek *exculpation* from liability to Butlar but rather *indemnification* from Ecco for such potential liability. The indemnification agreement resembles an insurance agreement; indeed, the real situation here appears to be that Clovis maintains insurance against liability to Butlar and Clovis' insurer now attempts to transfer that liability to Ecco and Ecco's insurer." (62 Cal.2d at p. 48; and see *Baldwin Contracting Co.* v. *Winston Steel Works, Inc.* (1965) 236 Cal.App.2d 565, 577 [46 Cal.Rptr. 421]; *Pacific Tel. & Tel. Co.* v. *Chick* (1962) 202 Cal.App.2d 708, 716 [21 Cal.Rptr. 326].)

█ In *Goldman* the court concluded that an indemnification agreement calling for financial protection against one's own negligence could not rest upon language "so loose and obscure" as that of the contract before it. (62 Cal.2d at p. 48.) Implicit in that holding was recognition of the principle that one may provide for indemnification against his own negligence by a clear and explicit agreement. (*Id.*, p. 44; accord: *Harvey Machine Co.* v. *Hatzel & Buehler, Inc.* (1960) 54 Cal.2d 445, 449 [6 Cal.Rptr. 284, 353 P.2d 924]; *Rosendahl Corp.* v. *H. K. Ferguson Co.* (1962) 211 Cal.App.2d 313, 316-317 [27 Cal.Rptr. 56]; *Pacific Tel. & Tel. Co.* v. *Chick, supra,* 202 Cal.App.2d 708, 712-715; *Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co.* (1962) 202 Cal.App.2d 99, 111-113 [20 Cal.Rptr. 820]; *County of Los Angeles* v. *Cox Bros. Constr. Co.* (1961) 195 Cal.App.2d 836, 842 [16 Cal.Rptr. 250]; and see *Vinnell Co.* v. *Pacific Elec. Ry. Co.* (1959) 52 Cal.2d 411, 414-416 [340 P.2d 604]; and *Baldwin Contracting Co.* v. *Winston Steel Works, Inc., supra,* 236 Cal.App.2d 565, 573-575.) In this case the trial court found the agreement was "clear, definite and certain," and no attack has been made upon the finding that the defendant agreed to indemnify the plaintiff under the circumstances of the loss which occurred.

█ The subcontractor seeks to avoid the application of the foregoing principles on several grounds. He properly notes that the statement first quoted from *Goldman* is dictum in view of the finding that the terms of the agreement did not cover indemnification if the negligence of the general contractor contributed to the injury, and would apply only if the injury resulted from the sole negligence of the subcontractor (62 Cal.2d at p. 49). The statement for whatever weight it may bear, and despite lack of discussion of the public policy involved, must be read in its context, and does apply

on the facts of that case to a situation, similar to that herein, which involves negligence predicated upon violation of a safety order (*id.*, at pp. 41-42). This dictum that there is no public policy against an agreement for indemnity, as distinguished from an agreement for exculpation from liability for negligence which is predicated upon a violation of law encompassed in a safety regulation, is reinforced by the facts in *Baldwin* and *Chick, supra.* In the former case the evidence showed that there were high voltage wires at a height which afforded less than the required minimum of 12 feet of clearance from the highest point of the building being erected (236 Cal.App.2d at pp. 570-571). The court, after finding that there was no express agreement whereby one of two subcontractors undertook to indemnify the contractor for the latter's negligence (*id.*, pp. 573-575), rejected the contention that any provision requiring the subcontractor to indemnify the contractor was against public policy (*id.*, p. 577), and left to the trier of fact the question whether or not the general contractor could recover from the two subcontractors on the basis of implied indemnification or whether its active negligence precluded such recovery (*id.*, pp. 572 and 575-576). In *Chick* the court expressly rejected the contention that Civil Code section 1668 barred enforcement of an indemnity agreement when the claim asserted and enforced against the indemnitee was based on negligence which in turn was predicated upon failure to comply with the provisions of a county ordinance governing excavations. (202 Cal.App.2d at pp. 710, 715-716; and see *Fred A. Chapin Lumber Co.* v. *Lumber Bargains, Inc.* (1961) 189 Cal.App.2d 613, 615-618 [11 Cal.Rptr. 634], violation of a local fire prevention ordinance.)

Yielding to the importunities of the subcontractor for reconsideration of what appears to be established by the foregoing authorities produces no change in doctrine. He points to the public policy which precludes assertion of the doctrine of assumption of risk where injury results from a violation of law as incorporated in a statute, ordinance, rule or regulation (*Bragg* v. *Mobilhome Co.* (1956) 145 Cal.App.2d 326, 335-336 [302 P.2d 424]; *Atherley* v. *MacDonald, Young & Nelson, Inc.* (1956) 142 Cal.App.2d 575, 587 [298 P.2d 700]); and to the same policy which voids a true exculpatory clause. (*Hanna* v. *Lederman, supra,* 223 Cal.App.2d 786, 792; and see *Delta Air Lines, Inc.* v. *Douglas Aircraft Co.* (1965) 238 Cal.App.2d 95, 105-106 [47 Cal.Rptr. 518]; and Comment, *Contractual Exculpation from Tort Liability* (1964) 52 Cal.L.Rev. 350, 356-

358.) Recognition of the public policy expressed in regulations for the protection of employees, or for the safety of persons or property in buildings, does not in and of itself render the object of an indemnity contract a direct or indirect attempt to exempt anyone from responsibility for his own violation of law. The contractor was found liable in the principal suit and has paid a portion of the judgment. The argument that the indemnity agreement promotes violations of law, or tends to prevent compliance with the law is no more valid than that generally advanced against contracting for indemnity for ordinary negligence. The Restatement of Contracts recognizes that the test is whether the bargain tends to induce the tortious act, and that the indemnity agreement is not illegal where the tortious act is only an undesired possibility. (2 Rest., Contracts, § 572, p. 1077.) In *Spence & Howe Constr. Co.* v. *Gulf Oil Corp.* (Tex. S.Ct. 1963) 365 S.W.2d 631, 632, the opinion recites: ''The problem is one of contract construction and not public policy, and is so treated by the parties. Only a few jurisdictions, and Texas is not one of them, hold that a contract of indemnity against the results of one's negligence is contrary to public policy in that such contracts tend to encourage careless conduct. This theory or doctrine is not regarded as being sound and has been described as being somewhat fanciful. From a public policy standpoint, an indemnity agreement against one's negligence issued by an insurance company would be as objectionable for encouraging carelessness as would an indemnity contract issued by any other form of entity or by a natural person. See, *Griffiths* v. *Broderick,* 27 Wn.2d 901 [182 P.2d 18, 175 A.L.R. 1], and annotation following in the American Law Reports. Of course, certain types of indemnity agreements may be contrary to public policy for various other reasons, Restatement of the Law of Contracts, §§ 572, 575, but the contract with which we are concerned cannot be so classified.'' So here it is fanciful to suppose that voiding the agreement would discourage violation of safety orders. The courts are not prepared to invalidate all insurance of the risk of liability for breach of such orders, and so long as the general contractor could secure such insurance he would be no less ''encouraged'' to be negligent or violate such orders. *Goldman* correctly points out that the present agreement merely involves a shifting of the burden.

█ Tara further asserts that a distinction should be made between a situation where separate active negligence of the indemnitee-contractor concurs with other active negligence of

the indemnitor-subcontractor (as found by the court herein), and cases of mere passive negligence, as found in some of the authorities referred to above, whereby the indemnitee merely acquiesces in dangerous conditions or acts, which it was the primary duty of the indemnitor to correct or prevent. (See *Harvey Machine Co.* v. *Hatzel & Buehler, Inc., supra,* 54 Cal.2d 445, 448; *Rosendahl Corp.* v. *H. K. Ferguson Co., supra,* 211 Cal.App.2d 313, 316; and *Pacific Tel. & Tel. Co.* v. *Chick, supra,* 202 Cal.App.2d 708, 712.) Such a distinction is determinative in a situation where a party seeks to enforce an implied right of indemnity because of a loss arising from the failure of another contracting party to perform a substantive part of his contract (see *Cahill Bros., Inc.* v. *Clementina Co.* (1962) 208 Cal.App.2d 367, 379-382 [25 Cal.Rptr. 301]).[4] It also may have significance in determining the scope of a general indemnity clause which does not expressly refer to the negligence of the indemnitee (see *Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co., supra,* 202 Cal.App.2d 99, 111-113). It does not, however, serve to defeat recovery by the indemnitee where, as here, the agreement expressly provides for indemnity where the loss is occasioned by the concurrent negligence of the indemnitee and the indemnitor (see *Delta Air Lines, Inc.* v. *Douglas Aircraft Co., supra,* 238 Cal. App.2d 95, 101).

 Tara's reliance on *Otis Elevator Co.* v. *Maryland Casualty Co.* (1934) 95 Colo. 99 [33 P.2d 974] (and see notes, (1935) 19 Minn.L.Rev. 471; and (1935) 20 Cornell L.Q. 352) introduces a policy argument which is not applicable here. Therein the court refused to permit the elevator company, which contracted for the repair and maintenance of the elevator, to shift the ultimate liability for its negligence to the building owner. The decision is predicated upon the special knowledge and skill of the purported indemnitee, and the lack of ability of the building owner to do the work itself. The commentators which were cited above recognize the general rule upholding indemnity agreements and recognize the special circumstances of the nature of the work undertaken by the elevator company and the hazard to the public at large if it is not performed properly. There is nothing in this case to

---

[4]Any suggestion that *Cahill* precludes recovery under an express indemnity agreement if the indemnitee was actively negligent is not supported by a reading of the case which has no reference to any provisions whereby the defendant expressly agreed to indemnify the plaintiff. (Cf. Witkin, Summary of Cal. Law (1965 Supp.) Torts, § 22D, p. 343, Express Indemnity.)

show that the general contractor, as distinguished from some other subcontractor, was particularly skilled in or undertook the work which resulted in the violation of the electrical safety orders with which it is charged.

The last-mentioned case does lead to consideration of one more approach advanced by the subcontractor. In *Tunkl* the following criteria were set forth as establishing a public interest which rendered an exculpatory agreement invalid: "It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." (60 Cal.2d at pp. 98-101, fns. omitted; and see Comment, *op. cit.*, 52 Cal.L.Rev. 350, 352-355.)

Despite *Goldman's* indication to the contrary (62 Cal.2d at pp. 48-49), Tara would apply the foregoing to defeat the indemnity agreement. The arguments advanced establish that the general contractor has the type of business which should be prevented from attempting to exculpate itself from liability to employees or others on the job who are injured by its negligence, but in no sense establish that it should not carry insurance or otherwise provide for indemnity for its potential liability to such persons. The relative bargaining power between the contractor and the subcontractor is not a decisive factor. If each competing subcontractor bids on the same terms and has an equal opportunity to secure for himself protection for the indemnity requested, the successful bidder has not been subjected to abuse by a superior bargaining power. The relationship between general contractor and subcontractor, as distinguished from contractor and employee, or hospital and

patient, would appear to be that of parties bargaining at arms' length. (See *Delta Air Lines, Inc.* v. *Douglas Aircraft Co., supra,* 238 Cal.App.2d 95, 101-105.) Finally, it is noted that the form and content of the contract are not unconscionable. The indemnity only comes into play if liability arises out of or in connection with the performance of the subcontractor's work. The general contractor cannot claim indemnity where liability arises solely and exclusively from its fault or negligence. Where, as here, there is concurrent negligence, there is nothing unreasonable in having settled beforehand who shall bear the burden in such event. Fault and the degrees thereof are impossible to untwine from the complex skein of circumstances which culminate in any particular accident.

" 'Neither law nor public policy prevents the ordinary contractor from buying from a third party indemnity from the pecuniary result of his own negligence. This is legitimate as insurance. How does the same process, with identical result, become illicit simply because they are those of the original and basic contract rather than a collateral one for conventional insurance?'' (*Minneapolis-Moline Co.* v. *Chicago etc. R.R. Co.* (8th Cir. 1952) 199 F.2d 725, 729.)

"It is also suggested that it would be contrary to public policy to extend the clause of this type to include indemnity for violation of the safe-place statute because it would tend to discourage the discharge of Seaman's duties in that respect. It may well be that Seaman could not contract with members of the general public and employees of Worden that it would not be liable for its own failure to maintain a safe place for frequenters and employees. That is not what it did, however. It simply purchased insurance from plaintiff and exacted an indemnity contract from defendant, the latter to cover cases where defendant's default contributed actively to Seaman's liability. If there were anything to defendant's contention, automobile and public liability insurance policies would be void." (*Hartford Acc. & Indem. Co.* v. *Worden-Allen Co.* (1941) 238 Wis. 124, 131-132 [297 N.W. 436, 440]; and see Annotation 175 A.L.R. (1948) 8, 144-149 and 143 A.L.R. 312, 314-315; *Chicago & N.W. R.R. Co.* v. *Chicago Packaged Fuel Co.* (7th Cir. 950) 183 F.2d 630; *Macon* v. *Warren Petroleum Corp.* (D.W.D. Tex. 1962) 202 F.Supp. 194; *Russell* v. *Shell Oil Co.* (1949) 339 Ill.App. 168 [89 N.E.2d 415]; *Terminal R.R. Assn. of St. Louis* v. *Ralston-Purina Co.* (1944) 352 Mo. 1013, 1018-1019 [180 S.W.2d 693]; *Polit* v. *Curtiss Wright Corp.* (1960) 64 N.J. Super. 437 [166 A.2d 387]; *Stern* v. *Larocca*

(1958) 49 N.J. Super. 496 [140 A.2d 403]; *Kingsland* v. *Erie County* (1949) 298 N.Y. 409 [84 N.E.2d 38, 50-51]; *Semanchuck* v. *Fifth Ave. & Thirty-Seventh St. Corp.* (1943) 290 N.Y. 412 [49 N.E.2d 507]; *Stellato* v. *Flagler Park Estates* (1958) 172 N.Y.S.2d 90; *St. Paul Mercury Indem. Co.* v. *Kopp* (Ohio App. 1954) 121 N.E.2d 23; *Spence & Howe Constr. Co.* v. *Gulf Oil Corp., supra,* 365 S.W.2d 631.)

The judgment is affirmed.

Sullivan, P. J., and Molinari, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 24, 1966.