[L. A. No. 24649.   In Bank.   Dec. 27, 1957.]

DOROTHY M. HOLTZ, Appellant, v. UNITED PLUMB-
ING AND HEATING COMPANY, INC. (a Corpora-
tion) et al., Respondents.

William Jerome Pollack and Abraham Gottfried for Appellant.

Hirson & Horn, Herbert L. Hirson, Theodore A. Horn, Edward M. Raskin, Ben C. Cohen, Leonard C. Ratner, Edison J. Demler, Boccardo, Blum & Lull, James F. Boccardo, Ashe

& Pinney, Van H. Pinney, Elmer Low, Pollock & Pollock, Edward I. Pollock, Oliver, Good & Sloan, Richard L. Oliver, Rose, Klein & Marias, Victor C. Rose, Samuel A. Rosenthal, Charles M. Feldstein, Lionel Campbell, Irwin D. Karesh, Downey A. Grosenbaugh, Marion P. Betty, Eugene E. Sax, and Myron L. Garon as Amici Curiae on behalf of Appellant.

Dryden, Harrington, Horgan & Swartz, Vernon G. Foster, Spray, Gould & Bowers and Frank J. Breslin, Jr., for Respondents.

GIBSON, C. J. — Plaintiff brought this action for the wrongful deaths of her husband and her son who were killed when the automobile in which they were traveling collided with one driven by Orville Brew on State Highway 138 near Pearblossom, California. All occupants of both cars died as a result of the collision. In addition to the administratrix of Brew's estate, plaintiff named as defendants Byron W. Taylor and United Plumbing and Heating Company, Inc., who were asserted to have been Brew's employers, Taylor's wife, and Pardee Building Corporation. Nonsuits were granted in favor of United, Mrs. Taylor and Pardee. Thereafter, the action was dismissed "without prejudice" as to Taylor upon plaintiff's request, and a judgment for damages was obtained against Brew's estate. Plaintiff has appealed from the judgment of nonsuit with respect to United and Pardee. She has conceded that there is no evidence connecting Pardee with the accident, and as to this defendant the judgment must be affirmed. The only respondent remaining on this appeal, therefore, is United.

The dismissal of the action with respect to Taylor did not operate as a retraxit barring recovery against United. It is undisputed that the dismissal arose from a covenant not to sue in which plaintiff reserved her rights against all of the defendants other than Taylor, that the trial court was informed of the agreement, and that the administratrix of Brew's estate, who was the only defendant aside from Taylor actively involved in the trial at the time, stipulated that plaintiff should retain her rights against the estate. A covenant not to sue does not constitute a present abandonment or extinguishment of a cause of action and does not release joint tort feasors. (*Lewis* v. *Johnson*, 12 Cal.2d 558, 562 [86 P.2d 99]; *Kincheloe* v. *Retail Credit Co., Inc.*, 4

Cal.2d 21, 23-24 [46 P.2d 971]; *cf. Pellett* v. *Sonotone Corp.,* 26 Cal.2d 705, 710 et seq. [160 P.2d 783].) ■ Plaintiff and Taylor were, of course, entitled to enter into the agreement, and, in order to comply with its terms, plaintiff was required to dismiss the action as to Taylor, but an outright dismissal operating to bar recovery against all of the defendants would have been contrary to the intention of the parties to the agreement. Plaintiff, therefore, requested a dismissal "without prejudice," and, under the circumstances, the court had just cause to grant the request in accordance with the authorization set forth in subdivision 5 of section 581 of the Code of Civil Procedure.* The case of *Markwell* v. *Swift & Co.,* 126 Cal.App.2d 245 [272 P.2d 47], relied upon by United, is readily distinguishable, since the order of dismissal there requested and granted did not provide that it was without prejudice.

■ This being a nonsuit case, we must, of course, view the evidence in the light most favorable to plaintiff, disregarding all conflicts and inconsistencies. There is no claim that plaintiff failed to show that Brew was guilty of negligence which proximately caused the accident, and the decisive consideration is whether United was an employer of Brew responsible for his negligence.

Prior to April in 1954 Brew was employed by Taylor, who was a Los Angeles contractor in the business of installing sprinkler systems. In the spring of 1954 Taylor was presented with an opportunity of doing such jobs in Las Vegas, Nevada, for two general contractors who were building housing units. As compensation for the jobs, the general contractors offered to pay cost plus 15 per cent. Taylor, however, was not licensed to act as a contractor in Las Vegas, and he enlisted the cooperation of United, a corporation which was licensed to do sprinkler installation work in that city. It was agreed between Taylor and United that United should "take over" the jobs by obtaining the necessary permits, hiring and paying the workmen, and furnishing such material as Taylor requested. Taylor was to draw the plans, direct the men on the job, and furnish the part of the material which was not supplied by United. According to Taylor, it was agreed that United should receive the cost of labor

*Subdivision 5 of section 581 of the Code of Civil Procedure provides, in part, "Dismissals without prejudice may be had . . . after actual commencement of the trial . . . by order of court on showing of just cause therefor."

and material supplied by it plus 10 per cent, and Taylor was to receive the balance of the 15 per cent profit from the jobs. United was paid directly by the general contractors on some occasions and through Taylor on others. The president of United visited the jobs to observe the progress of the work. When asked if the sprinkler systems were installed "between you and United," Taylor answered, "That is correct."

Brew came to Las Vegas from Los Angeles to work on the jobs in question. He was transferred from Taylor's payroll to that of United, and thereafter, until the time of the accident on Friday, June 11, 1954, he was employed and paid by United as a "fitter and supervisor." In response to a question as to the type of work which Brew did "for you," the president of United replied, "Supervising installating and making the actual installation. . . ." During the time that Brew worked in Las Vegas, Taylor paid his expenses, including the cost of trips made by Brew between Las Vegas and Los Angeles. Taylor was reimbursed for these payments by the general contractors as part of the cost of the jobs.

The car which Brew was driving from Las Vegas to Los Angeles when the accident occurred belonged to Taylor. Brew had previously used the car in connection with the sprinkler installations in Las Vegas, and on one weekend, at Taylor's direction, a pipe machine in need of repair was transported by Brew in the car from Las Vegas to Taylor's shop in Los Angeles. A number of pipe fittings of the type used in sprinkler installation work were found in the car after the accident, and Taylor was supposed to pay Brew for his gas and oil expenses on the trip which resulted in his death.

■ The evidence is sufficient to show that United and Taylor were engaged in a joint venture and that, at the time of the accident, Brew was acting in the course of his employment by the venture. ■ Whether a joint venture exists must largely depend upon determining the intention of the parties from the facts of a particular case because there is no certain and all-inclusive definition to be applied. ■ A joint venture has been defined in various ways but most frequently perhaps as an association of two or more persons who combine their property, skill or knowledge to carry out a single business enterprise for profit. ■ It has generally been recognized that in order to create a joint venture there

must be an agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control.

■ Such an agreement, however, need not be formal or definite in every detail relating to the respective rights and duties of the parties but may be implied as a reasonable deduction from their acts and declarations. (For definitions and requirements of joint ventures see note, 48 A.L.R. 1055; note, 138 A.L.R. 968; 48 C.J.S. 801-824; 30 Am.Jur. 675-694; Nichols, Joint Ventures (1950), 36 Va.L.Rev. 425.)

■ United and Taylor entered into an agreement pursuant to which they both contributed services and material toward a common end, namely, the installation of the sprinkler systems. It could be inferred that their contributions were made for the joint purpose of obtaining the 15 per cent fee to be paid by the general contractors as the profit to be realized from the venture, and an understanding as to the manner in which that profit was to be shared was also shown. The matter of losses apparently was never discussed, but, since this was a cost plus transaction, the chance of loss was rather remote. ■ Moreover, an understanding as to the division of the profits ordinarily carries with it, in the absence of an express agreement to the contrary, an implied obligation to share losses in the same proportion. (See 30 Am.Jur. 675, 694; note, 138 A.L.R. 968, 973.)

■ A conclusion that United and Taylor had a right of joint control over the installation work is also warranted. Although Taylor appears to have directed the men while they were employed on the jobs, United was responsible for supplying and paying them, and Brew, who acted in a supervisory capacity, was carried on United's payroll as an employee. Moreover, since United was the party which obtained the official permits, it would naturally be expected to have retained a right of control over the operations, and the fact that it did so is indicated by the visits which its president made to see how the jobs were progressing.

In support of its position that it was not engaged in a joint venture, United argues that it did nothing more than sell labor and material to Taylor and that the money it received was in the nature of compensation, rather than a share of the profits. This argument, however, requires the drawing of inferences against plaintiff, and further it is obviously in conflict with the facts that United obtained the

necessary permits and that, at least some of the time, it was paid directly by the general contractors and not by Taylor.

■ Testimony to the effect that United always billed Taylor and not the general contractors, that it participated in the enterprise solely as a personal favor to one of the general contractors who gave it assurances against loss, and that all of the workmen, including Brew, took their orders from Taylor might be viewed as tending to support United's position, but on nonsuit that testimony may be disregarded, and, in any event, the matters to which it relates are not necessarily inconsistent with the existence of a joint venture.

■ With respect to whether Brew was acting in the course of his employment by the venture at the time of the accident, it was established that he was driving Taylor's car and was to be reimbursed by Taylor for gas and oil expenses on the trip. This fact standing alone is persuasive, and, when it is considered together with the evidence relating to the contents of the car and Brew's previous use of the vehicle between Las Vegas and Los Angeles for the benefit of the venture, the showing by plaintiff is clearly sufficient.

■ There is, we think, another view of the evidence which, without a finding that a joint venture existed, would support a judgment for plaintiff. Obviously, Brew could properly be regarded as an employee of United while he was working in connection with the installation jobs. It could be found that, pursuant to the agreement under which United was to "take over" the jobs, United assumed control, so far as the workmen were concerned, and authorized Taylor to direct them. The evidence would support a finding that Taylor as the agent of United directed Brew to take the trip to Los Angeles on the day the accident occurred.

The judgment of nonsuit is affirmed as to Pardee and reversed as to United.

Shenk, J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.