[Civ. No. 22935.   Second Dist., Div. One.   Aug. 1, 1958.]

MARGERY LEE WHITE, Respondent, v. COX BROTHERS
     CONSTRUCTION COMPANY (a Corporation), et al.,
     Defendants; COUNTY OF LOS ANGELES, Appellant.

Harold W. Kennedy, County Counsel, and Lloyd S. Davis, Deputy County Counsel, for Appellant.

G. Keith Sprague and Chapman & Sprague for Respondent.

FOURT, J.—This is an appeal from a judgment on the verdict of a jury in favor of the plaintiff for damages and injuries suffered in an accident allegedly resulting from a defective street.

On June 24, 1955, Harold Atenese was driving the plaintiff's automobile westerly on Imperial Highway near the intersection of Imperial Highway and Luitweiler Avenue in the unincorporated territory of the county of Los Angeles.

The plaintiff was riding in her automobile at the time. Imperial Highway, where the accident occurred, was being reconstructed by a construction company under a contract let by the county of Los Angeles. The work consisted, in part, of the removal of the pavement from the surface of Imperial Highway, commencing about 50 feet east of Luitweiler Avenue. During the late afternoon of the day of the accident, when it was still daylight, the plaintiff's car was traveling westerly, and the front wheels thereof struck the first drop off between the old pavement and the gravel surface where the pavement had been removed, and then struck a "chuck hole," and the car skidded and overturned. The drop off was at the crest of a hill such that westbound drivers could not see the drop off or the excavated roadway until they were almost upon it.

There was evidence that a water line under Imperial Highway, at the place of the accident, had been leaking for months, and that before the contractors had started excavating and repaving, there was a hole caused by the leaking water which extended from the edge of the asphalt into the paved portion of the roadway. The hole began 2 feet north of the asphalt and extended from 1 foot to 1½ feet into the asphalt and was 6 to 18 inches in depth and up to 2 to 2½ feet wide. It was wet and stayed that way until June 27, 1955. After the paving was removed the hole remained but got larger. The county inspector saw the "damp spot." There was also testimony that the condition was reported to the Los Angeles County Health Department and to "someone in a County Road Department car" long before the construction work started.

The excavated roadway consisted of "washboards" and loose gravel. The roadway was heavily traveled and the traffic tended to loosen the rock and create holes and ruts which required the contractor's smoothing and grading the surface every few days to prevent it from being hazardous. Two days before the accident the contractor's employees went out on strike and no work was being performed at the time of the accident. There was testimony of a long-existing 6-inch hole three yards west of the drop off. There was also evidence that during the 12 days prior to the accident, cars on the roadway struck something on the road so hard that "it . . . jarred the house" and "occurred pretty near 24 hours a day," and of the hubcaps being forced off of the cars by reason of these impacts.

During the period of time between the commencement of the construction work and the accident there had been placed and maintained two advance warning signs and a barricade to warn drivers of the construction work. The first sign was of a type designated by the State Department of Public Works as a "W35R" wherein the word "SLOW" is written in reflectorized letters on a yellow background, and was mounted on a post to the side of the highway about 300 feet from the termination of the pavement, and is in the category of the ordinary "warning signs" commonly placed on highways. The planning manual of instructions issued by the Department of Public Works, Division of Highways, states with reference to this particular type of sign, "This sign must be sparingly used to prevent ineffectiveness."

A second sign of a type designated as "P.R." consisting of the words, "Construction Zone—Drive Carefully," in 6-inch high black letters on a yellow background about 84 inches by 60 inches, was mounted between two posts about 100 feet from the termination of the pavement. The manual heretofore referred to, states in part with reference to this sign, "Use the P.R. sign in pairs to bracket the individual sections of a project where traffic is affected by construction work. Several pairs may be needed on one construction project . . .," and are to be located "on the right 100 feet to 800 feet in advance of construction activities." This sign is in the category of "Construction Type Signs" and, as the manual indicates, "on major highways, particularly where speeds are high, larger signs may be required," and "[d]ue to unusual conditions encountered on construction projects, the position may be varied to obtain maximum effectiveness."

A third sign, apparently not of the type described or set forth in the "Uniform Sign Chart" of the Department of Public Works, had, most of the time prior to the accident, been located in the center of the highway about 50 feet from the end of the pavement. This sign consisted of the word "SLOW" in block letters a foot high, mounted on a barricade and equipped with an orange flasher. On one occasion the sign was placed on the shoulder of the highway, but appellant states in its brief that, ". . . at the time of the accident, this sign was apparently lying in the grass at the side of the road."

The job site was inspected regularly by a county inspector, and although the appellant states in its brief that the inspector ". . . testified that all warning signs were in place on

the morning of the day of the accident,'' we find that the following is the testimony of the inspector:

''Q. Did you see it there on the 23rd? A. I visited the project on the 23rd, Mr. Sprague, to examine the signs, and I do not recall that it had been moved.

. . . . . . . . . . . . . .

''Q. Do you have a recollection of visiting there and seeing the signs on the 24th, or would it help your recollection if you were allowed to read your deposition on that subject? A. I have a record here of the time of day of my visit on the 24th at 10:15, and the purpose of my visit to Imperial and Luitweiler on June 24th was to examine the condition of the roadway, the signs, barricades, lights in place.

''Q. Is it your recollection that you saw the signs there, based upon the notation in your record? A. Well, as I say, I visited the project for that purpose. I have no record in here that anything was amiss.

''Q. Is the absence of any such record upon which you base your statement that the signs, and particularly the flasher light sign was in the center of Imperial Highway on the 24th of June? A. I think I would have noted anything amiss if I had noticed it.''

Before the trial the plaintiff received $3,500 from the codefendants (among them the construction company), and gave them a covenant not to sue and filed a dismissal as to said defendants.

The trial resulted in a verdict in favor of the plaintiff in the sum of $15,000, from which the $3,500 above referred to was deducted. This appeal followed.

Appellant contends that there was no evidence to support a finding that there was notice to the board of supervisors, or other person employed by the county authorized to remedy the dangerous or defective condition; that the driver of the car was guilty of negligence as a matter of law, and his negligence was imputed to the plaintiff; that the dismissal as to the codefendants of appellant constituted a release as to the appellant; that the jury was erroneously instructed, and that the court erred in refusing to give certain instructions.

It is conceded that the Public Liability Act, section 53051 of the Government Code, is the sole basis for imposing liability in this case.

In our opinion it was a question of fact whether the county inspector had notice of the condition at the place of the accident, and if he did have knowledge, such knowledge

is chargeable to the county. (See *Murphy* v. *County of Lake*, 106 Cal.App.2d 61 [234 P.2d 712]; *Balkwill* v. *City of Stockton*, 50 Cal.App.2d 661 [123 P.2d 596]; *Newman* v. *County of San Mateo*, 121 Cal.App.2d 825 [264 P.2d 594]; *Allen* v. *City of Los Angeles*, 43 Cal.App.2d 65 [110 P.2d 75]; *Ackers* v. *City of Los Angeles*, 40 Cal.App.2d 50 [104 P.2d 399]; *Bridges* v. *County of Los Angeles*, 131 Cal.App.2d 151 [280 P.2d 76].)

While we are cognizant of the ruling in *Electrical Products Corp.* v. *County of Tulare*, 116 Cal.App.2d 147 [253 P.2d 111], we do not consider it to be determinative of the present controversy, in which a different factual situation is before the court.

Appellant insists that the Legislature has placed the responsibility for establishing uniform types of warning signs in the State Department of Public Works, and cites section 465.7, Vehicle Code, which in part reads:

"The State Department of Public Works shall determine and publicize the specifications for uniform types of warning signs, lights and devices to be placed upon a highway by any person, firm or corporation engaged in performing work which interferes or endangers the safe movement of traffic upon such highway."

Further, appellant states that the state having occupied the field, so to speak, the county would not be authorized to vary the requirements. Section 465, subdivision (b) of the Vehicle Code provides, in part, as follows: "Local authorities . . . shall place and maintain or cause to be placed and maintained, such appropriate signs, signals or other traffic control devices as . . . may be necessary properly to . . . warn or guide traffic."

It apparently is admitted in this case that the number three sign which was "lying in the grass at the side of the road," was not of the type specified by the State Department of Public Works.

Appellant next asserts that the driver of the plaintiff's car was negligent as a matter of law. The basis of the assertion is that the driver failed to obey the signs erected and therefore he did not exercise ordinary care. The county inspector testified, "I guess for the most part the traveling public observed the signs, slowed down to 40 to 50." The traffic was heavy over the particular road; it was a 55-mile-per-hour zone, and prior to seeing the third sign the driver was traveling at about 50 to 55 miles per hour. He decreased his speed to

40 to 45 miles per hour. Whether his failure to see the signs, if he did not see them, was negligence under the circumstances and whether such was the proximate cause of the damages, were issues of fact for the jury to determine. (*Rath* v. *Bankston*, 101 Cal.App. 274, 281 [281 P. 1081]; *Pittam* v. *City of Riverside*, 128 Cal.App. 57 [16 P.2d 768]; *Owen* v. *City of Los Angeles*, 82 Cal.App.2d 933 [187 P.2d 860].)

The court upon its own motion gave the following instruction:

"I have read to you certain provisions of the Vehicle Code of this State. You are instructed that you are to consider a violation of all or any of these statutory provisions in relation to the conduct of the driver of the automobile owned by the plaintiff and in which she was riding at the time of the accident in question in determining whether or not said driver was negligent and if such negligence, if you find he was negligent, was a proximate cause of the accident and resulting injuries suffered by plaintiff. These instructions are to be construed in the light of all other instructions in this case.

"Therefore you may consider whether the warning signals were so placed and of such size and nature that a reasonably prudent and observant driver would have seen them, or should have seen them in the exercise of due care at the particular place and time of the accident in question, and whether, taking into consideration all of the facts and circumstances the said driver was driving at a speed greater than was reasonable and prudent, and if you find that in the exercise of due care a reasonably prudent and cautious driver would have looked and seen said warning signals and would have reduced the speed of the car he was driving and brought it under such control that the accident would have not happened, regardless of the condition in, on or about the roadway at the time, then you would be justified in finding the said driver was negligent. The determination of the weight or effect of the evidence is the exclusive province of the jury, and if you determine from all the facts and circumstances that the weight of evidence does not preponderate or have more convincing force to establish the affirmative defense of contributory negligence, then you would be justified in finding that the driver of plaintiff's car was not guilty of contributory negligence.

"But such finding last referred to, standing alone, would not support a verdict for plaintiff, unless you also find that the defendant County of Los Angeles is liable under the pro-

visions of the Public Liability Act as covered in other instructions.''

■ In effect, the court's instruction stated to the jury: (1) that the jury was to consider a violation of all or any of the statutory provisions in determining if the driver was negligent and, if so, if his negligence was a proximate cause of the accident; (2) that the jury was to consider whether, under all of the facts and circumstances of the case, the plaintiff's driver acted as a reasonable and prudent driver in doing what he did; and (3) that if he did not, the jury would be justified in finding he was negligent.

Appellant insists that the instruction was erroneous as given by the court, and that it should have given an instruction based upon B.A.J.I. 149.1. We believe that the instruction as given by the court was proper, and that the instruction requested by the appellant based on B.A.J.I. 149.1 would have been confusing to the jury in that it contains language in effect stating that ''the evidence must support a finding that the violation resulted from causes or things beyond the control of the person charged with the violation.''

■ We think that there is no merit to the claim of the appellant that the dismissal for a consideration of certain codefendants constitutes a release of the appellant. (See *Kincheloe* v. *Retail Credit Co., Inc.*, 4 Cal.2d 21 [46 P.2d 971]; *Holtz* v. *United Plumb. & Heating Co.*, 49 Cal.2d 501 [319 P.2d 617]; *Lewis* v. *Johnson*, 12 Cal.2d 558 [86 P.2d 99]; *Gerald* v. *San Francisco Unified School Dist.*, 121 Cal. App.2d 761 [264 P.2d 90].)

It is uncontradicted that the plaintiff gave certain of the defendants a covenant not to sue at a time when the statute of limitations had run on plaintiffs' cause of action, for which she received $3,500, and directed the dismissal of the action as to those particular defendants. There was no thought of abandoning the action against the county. The parties who engaged in and made such an agreement were entitled to do so, but any dismissal as to the defendants paying the $3,500, operating as a bar to proceeding against the county was completely contrary to the intent of the parties.

■ A complete reading of all of the instructions given by the court considered with the evidence convinces us that the jury was properly instructed. Appellant insists that the basis of liability must exist because of section 53051 of the Government Code, and therefore the giving of instructions respecting general negligence was clearly erroneous. Suffice it

to say that the claimed negligence of the driver was before the jury because of the contentions of the appellant and instructions on the subject were necessary for the jury properly to evaluate the conduct of the driver. Under the circumstances, the instructions as to principal and agent were proper. And as the respondent has set forth in her brief:

"The instruction regarding the inability of the County to abdicate its duty to exercise proper supervision over the work of third persons improving its streets was necessary to advise the jury that, where the requirements of the Public Liability Act were otherwise met, the County could not escape liability for a dangerous or defective condition simply because someone else created it or, in violation of its contract with the County, allowed it to remain or failed to warn thereof. *Waldorf* v. *Alhambra,* 6 Cal.App.2d 522 [45 P.2d 207]. *Mulder* v. *City of Los Angeles,* 110 Cal.App. 663 [294 P. 485].

"Since full instructions were given on the requirements for plaintiff to prove a case under the Public Liability Act, and thus no prejudicial error could result, any error which existed would not constitute ground for reversal. *Silva* v. *Fresno County,* 63 Cal.App.2d 253 [146 P.2d 520]."

As to the assertion that a violation of the penal provisions of the Vehicle Code is negligence *per se,* the correct rule is stated in *Satterlee* v. *Orange Glenn School Dist.,* 29 Cal.2d 581, at page 590 [177 P.2d 279]:

"In the application of this rule each violation of a statutory requirement must be considered in connection with the surrounding circumstances. Ordinarily, the excuse relied upon by the violator presents a question of fact for the jury's determination. As stated in *Scalf* v. *Eicher, supra* [11 Cal. App.2d 44 (53 P.2d 368)], . . . : 'Whether or not a violation of a statute or ordinance proximately contributed to an accident and whether the violation was excusable or justifiable are questions of fact except in a case where ". . . the court is impelled to say that from the facts reasonable men can draw but one inference and that an inference pointing unerringly to the negligence of the plaintiff contributing to his injury." ' (Citing cases.)"

The court also instructed as to the life expectancy of the plaintiff, but omitted the qualifying conditions about normal health. As said in *Newman* v. *Campbell,* 23 Cal.App. 2d 639, at page 641 [73 P.2d 1265]:

"If the appellant desired an instruction explaining in more

detail the weight to be given the elements fixing her life expectancy . . . such an instruction should have been offered. This was not done, and in the circumstances appellant has no ground for complaint.''

Appellant's last contention is that the jury should have been instructed that it is presumed that official duty has been regularly performed. (Code Civ. Proc., § 1963, subd. 15.) Under the circumstances of this case we are of the opinion that it was not error to omit such an instruction.

We have considered the remaining assertions and contentions of appellant not herein particularly pointed out, but we deem it unnecessary to comment further thereupon.

We find no prejudicial error in the record.

The judgment is affirmed.

White, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 24, 1958. Traynor, J., and Schauer, J., were of the opinion that the petition should be granted.